**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| HEVER ALBERTO MENDOZA LINARES, | No. 20-71582 |
| *Petitioner*, | Agency No. A213-209-821 |
| v. | |
| MERRICK B. GARLAND, Attorney General, | ORDER |
| *Respondent*. | |

Filed July 5, 2023

Before: Susan P. Graber and Daniel P. Collins, Circuit Judges, and Jennifer Choe-Groves,[*] Judge.

Order;
Concurrence by Judge Collins;
Statement by Judge Berzon

---

[*] The Honorable Jennifer Choe-Groves, Judge for the United States Court of International Trade, sitting by designation.

## SUMMARY[**]

## Immigration

The panel denied a petition for rehearing en banc after a request for a vote on whether to rehear the matter en banc, and the matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration, in a case in which the panel held that: (1) subject only to a very limited form of habeas corpus review that is inapplicable in this case, § 242 of the Immigration and Nationality Act ("INA"), see 8 U.S.C. § 1252, "clearly and unambiguously" precludes judicial review of expedited removal orders, even with regard to constitutional challenges to such orders; and (2) as applied in this case—which involved an arriving alien with no previous ties to the United States—that denial of all judicial review was constitutional.

Concurring in the denial of rehearing en banc, Judge Collins wrote briefly only to respond to certain points made in the Statement disagreeing with the court's decision not to rehear this case en banc.

Judge Collins explained that in examining the structure of the expedited removal system, the panel majority properly focused on the only class of aliens whom Congress itself automatically subjected to that system, namely, aliens "arriving in the United States." Judge Collins wrote that the Attorney General's decision, under INA § 235(b)(1)(A)(iii)(I), to extend the expedited removal

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

system—with its lack of judicial review—to additional aliens (i.e., beyond arriving aliens) may raise different constitutional questions. But the fact that such extensions are authorized (within limits) under the statute and may raise distinct constitutional issues provides no basis for failing to acknowledge the statute's unambiguous denial of judicial review of expedited removal orders. As the Supreme Court has stated, and the panel majority noted, courts cannot press statutory construction to the point of disingenuous evasion even to avoid a constitutional question. Where, as here, Congress has clearly and comprehensively sought to bar judicial review, its intent must be respected even if a difficult constitutional question is presented.

Judge Collins noted that the Statement argues that if and when the court is presented with a purported petition for review of an expedited removal order involving a non-arriving alien, it will be constrained to find the statute unconstitutional as applied in such cases. Judge Collins wrote that because that issue was not before the panel and was not decided by it, it remains open for another case and another day.

In a Statement respecting the denial of rehearing en banc, Judge Berzon, joined by Chief Judge Murguia and Judges Graber, Wardlaw, W. Fletcher, Gould, Paez, Christen, Koh, Sung, Sanchez, Mendoza, and Desai, agreed with Judge Graber's comprehensive dissent as to why the panel's statutory construction is improper in light of the constitutional avoidance principle of statutory construction. Judge Berzon also agreed that arriving aliens have some due process rights. Judge Berzon wrote only to underscore the panel majority's fundamental misunderstanding of who can be subject to expedited removal, an error that entirely undermines the opinion's

statutory interpretation and will guarantee the statute's unconstitutional application to a large group of noncitizens.

Judge Berzon explained that the majority's conclusion that no unconstitutional application will result from its interpretation of 8 U.S.C. § 1252 turns a blind eye to the legal and practical actual reach of the expedited removal statute. The expedited removal statute must be applied to noncitizens "who [are] arriving" and can be applied to any other noncitizen who has not been "physically present in the United States continuously for the 2-year period immediately prior" to a determination of inadmissibility. 8 U.S.C. § 1225(b)(1)(i), (iii)(II). The majority's statutory construction nonetheless rests at several junctures on Congress's purported awareness that expedited removal proceedings apply only to arriving noncitizens, whom the majority concludes wrongly, possess no constitutional rights. Judge Berzon wrote that once that error is corrected, it becomes apparent that the majority opinion's twin premises—that the constitutional avoidance principle does not apply, and that Congress crafted the statute on the understanding that the noncitizens affected had no rights to due process under the federal Constitution—cannot stand. And without those premises, the majority's interpretation of the INA's expedited removal judicial review provisions as banning all review of constitutional claims collapses as well.

**ORDER**

The full court was advised of the petition for rehearing en banc.  A judge requested a vote on whether to rehear the matter en banc, and the matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration.  *See* FED. R. APP. P. 35(a).

The petition for rehearing en banc is **DENIED**.

---

COLLINS, Circuit Judge, concurring in the denial of rehearing en banc:

As the author of the majority opinion for the panel in this case, I unsurprisingly concur in the denial of rehearing en banc.  The panel majority's opinion exhaustively explains that: (1) subject only to a very limited form of habeas corpus review that is inapplicable here, § 242 of the Immigration and Nationality Act ("INA"), *see* 8 U.S.C. § 1252, "clearly and unambiguously" precludes judicial review of expedited removal orders, "even with regard to constitutional challenges to such orders," *Mendoza-Linares v. Garland*, 51 F.4th 1146, 1149 (9th Cir. 2022); and (2) "as applied in this case"—which involves an arriving alien with "no previous ties to the United States"—that "den[ial] [of] all judicial review" is constitutional, *see id*. at 1148, 1167.  I write briefly only to respond to certain points made in the Statement joined by several of my colleagues disagreeing with our court's decision not to rehear this case en banc.

As the majority opinion correctly notes, the expedited removal system established in § 235(b) of the INA, *see* 8 U.S.C. § 1225(b), is "generally applicable only to an alien

'who is arriving in the United States.'" *See Mendoza-Linares*, 51 F.4th at 1164 (quoting 8 U.S.C. §§ 1225(b)(1)(A)(i)).    The Statement notes that, under § 235(b)(1)(A)(iii)(I), the "Attorney General" may choose to extend the expedited removal system to certain additional aliens, beyond those who are arriving in the United States.[1] *See* 8 U.S.C. § 1225(b)(1)(A)(iii)(I).    Specifically, the Attorney General may designate for processing in § 235(b)'s expedited removal system "any or all" of the following additional aliens:

> [A]n alien who is not described in subparagraph (F), who has not been admitted or paroled into the United States, and who has not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph.

*Id*. § 1225(b)(1)(A)(iii)(II); *see also id*. § 1225(b)(1)(F) (excluding from eligibility for expedited removal "an alien who is a native or citizen of a country in the Western Hemisphere with whose government the United States does

---

[1] As noted in the panel opinion, because the relevant authorities conferred on the Attorney General in the INA are in some instances now exercised by the Secretary of Homeland Security, the statutory reference to the "Attorney General" must be understood as referring, as appropriate, to the Secretary. *See Mendoza-Linares*, 51 F.4th at 1154 n.6 (citing 6 U.S.C. § 557).  My references to the "Attorney General" should be understood in the same way.

not have full diplomatic relations and who arrives by aircraft at a port of entry"). The Statement notes that, to varying degrees over time, the Attorney General has since 2002 affirmatively invoked this authority to make some or all members of this additional class of aliens subject to expedited removal. Against this backdrop, the Statement contends that (1) the additional aliens who are covered by such extensions of the expedited removal system include many who would have sufficient ties to the United States to give them due process rights with respect to their removal; and (2) to avoid the substantial constitutional question presented by the denial of judicial review of constitutional claims as to *that* set of aliens, § 242 must be construed as *generally* authorizing judicial review of constitutional questions in expedited removal cases. But even assuming *arguendo* that the Statement's first premise is correct, its second premise is plainly wrong.

The panel majority's opinion painstakingly explains why the only reasonable reading of the statutory text is that, except for a very limited habeas corpus review, judicial review of expedited removal orders is barred, even with respect to constitutional claims. *See Mendoza-Linares*, 51 F.4th at 1153–66. Moreover, in examining the structure of the expedited removal system, the panel majority properly focused on the only class of aliens whom Congress itself automatically subjected to that system, namely, aliens "arriving in the United States." 8 U.S.C. §§ 1225(b)(1)(A)(i). That is "precisely the situation in which a denial of judicial review is least likely to present constitutional difficulties," because "it has been long settled that 'an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude

aliens is a sovereign prerogative.'" *Mendoza-Linares*, 51 F.4th at 1164 (citation and emphasis omitted). And that explains why, when Congress added § 242(a)(2)(D) "specifically demarcating *which* provisions of the INA are to be construed as preserving review of constitutional claims and questions of law," it "expressly carved out" the provision generally barring judicial review of expedited removal orders (which is § 242(a)(2)(A)). *Id*. at 1163.

The Attorney General's decision to extend the expedited removal system—with its lack of judicial review—to additional aliens (*i.e.*, beyond arriving aliens) may raise different constitutional questions. But the fact that such extensions are authorized (within limits) under the statute and may raise distinct constitutional issues provides no basis for failing to acknowledge the statute's unambiguous denial of judicial review of expedited removal orders. As the Supreme Court has stated, and the panel majority noted, courts "cannot press statutory construction to the point of disingenuous evasion even to avoid a constitutional question." *Miller v. French*, 530 U.S. 327, 341 (2000) (citation and internal quotation marks omitted); *see also Mendoza-Linares*, 51 F.4th at 1162. Where, as here, Congress has clearly and comprehensively sought to bar judicial review, "its intent must be respected even if a difficult constitutional question is presented." *Boumediene v. Bush*, 553 U.S. 723, 738 (2008). Indeed, Congress's explicit decision to punt to the Attorney General the decision as to whether to extend the expedited removal system bespeaks some hesitation on its part as to whether that system may properly be extended beyond arriving aliens. If anything, Congress's decision, effectively, to leave it to the Attorney General to assess the constitutional implications of any such extension before actually invoking it only

underscores Congress's clear intention to press the limits of the Constitution in this area.

The Statement argues that, if and when we are presented with a purported petition for review of an expedited removal order involving a non-arriving alien, we will be constrained to find the statute unconstitutional as applied in such cases. That issue was not before the panel and was not decided by it. That question remains open for another case and another day.

---

BERZON, Circuit Judge, with whom MURGUIA, GRABER, WARDLAW, FLETCHER, GOULD, PAEZ, CHRISTEN, KOH, SUNG, SANCHEZ, MENDOZA, and DESAI, Circuit Judges, join, respecting the denial of rehearing en banc:

The majority opinion in this case interprets section 1252 of the Immigration and Nationality Act ("INA") as precluding judicial review of colorable constitutional violations that occur in the course of removing noncitizens covered by the INA's expedited removal system. *Mendoza-Linares v. Garland*, 51 F.4th 1146, 1160 (9th Cir. 2022). I agree with the comprehensive dissent as to why the panel's statutory construction is improper in light of the constitutional avoidance principle of statutory construction. *See id.* at 1179 (Graber, J., dissenting). I also agree with the dissent that arriving aliens have some due process rights. *See id.* at 1179–80. I write only to underscore the panel majority's fundamental misunderstanding of who can be subject to expedited removal, an error that entirely undermines the opinion's statutory interpretation and will

guarantee the statute's unconstitutional application to a large group of noncitizens.

The majority's conclusion that no unconstitutional application will result from its interpretation of 8 U.S.C. § 1252 turns a blind eye to the legal and practical actual reach of the expedited removal statute. The expedited removal statute must be applied to noncitizens "who [are] arriving" and can be applied *to any other* noncitizen who has not been "physically present in the United States continuously for the 2-year period immediately prior" to a determination of inadmissibility. 8 U.S.C. § 1225(b)(1)(i), (iii)(II). As early as 2002, the government has applied expedited removal proceedings to physically present noncitizens. *See* Notice Designating Aliens Subject to Expedited Removal Under Section 235(b)(1)(A)(iii) of the Immigration and Nationality Act, 67 Fed. Reg. 68,924 (Nov. 13, 2002).

The majority's statutory construction nonetheless rests at several junctures on Congress's purported awareness that expedited removal proceedings apply only to arriving noncitizens, whom the majority concludes (wrongly, as the panel dissent explains, *see Mendoza-Linares*, 54 F.4th at 1179–80) possess no constitutional rights. *Id.* at 1149, 1164. Once that error is corrected, it becomes apparent that the majority opinion's twin premises—that the constitutional avoidance principle does not apply, *see id.* at 1160, and that Congress crafted the statute on the understanding that the noncitizens affected had no rights to due process under the federal Constitution, *see id.* at 1164—cannot stand. And without those premises, the majority's interpretation of the INA's expedited removal judicial review provisions as banning all review of constitutional claims collapses as well.

1. The majority opinion both (1) defends its purported plain text reading of the statute and (2) denies that a clear statement test is required to avoid constitutional concerns by relying on the erroneous notion that expedited removal is "generally applicable only to an alien 'who is arriving to the United States,'" whom the majority (incorrectly) concludes has *no* constitutional due process rights. *Mendoza-Linares*, 51 F.4th at 1164 (quoting 8 U.S.C. § 1225(b)(1)(A)(i)).

Here is how the maneuver takes place:

First, the *Mendoza-Linares* majority interprets Congress's passage of the REAL ID Act of 2005, enacting section 1252(a)(2)(D), as evidence that Congress clearly intended to preclude review of constitutional claims relating to expedited removal. 51 F.4th at 1161. Rejecting the dissent's suggestion that Congress did not list section 1252(a)(2)(A) in the enumerated list of subsections not precluding review of constitutional claims because Congress understood colorable constitutional claims under subparagraph A *would* be reviewable, *see Mendoza-Linares*, 51 F.4th at 1177 (Graber, J., dissenting), the majority asserts that that subparagraph "addresses only expedited removal orders under [section 1225(b)(1)], which are generally applicable only to an alien 'who is arriving in the United States,'" and so (in the majority's view) lacks any constitutional rights. *Id.* at 1164 (citations omitted). The majority repeats: "[W]hat is distinctive about subparagraph (A) is that it is limited to precisely the situation in which a denial of judicial review is *least* likely to present constitutional difficulties" because it applies to noncitizens who "have no constitutional rights concerning their applications." *Id.*

The majority next maintains that a clear statement of intent to preclude judicial review of constitutional claims is not required because—once again—the noncitizens affected by the statute do not have constitutional rights. "The reason why a clear statement is required with respect to denials of judicial review of constitutional claims is to avoid the serious constitutional question that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim . . . . But that predicate is absent here, because denying all judicial review of constitutional questions *concerning admission of an arriving alien* does not raise a substantial constitutional question." *Id.* (emphasis added) (citations and internal quotation marks omitted).

The majority's premise is wrong.   The expedited removal statute does *not* apply only to "arriving" noncitizens. The statute *requires* expedited removal of inadmissible noncitizens "who [are] arriving in the United States." 8 U.S.C. § 1225(b)(1)(A)(i). But the statute expressly authorizes expedited removal for noncitizens who are *not* arriving, but have simply "not been admitted or paroled into the United States, and who [have] not affirmatively shown" that they have "been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph." 8 U.S.C. § 1225(b)(1)(A)(iii)(I)-(II). In other words, the expedited removal statute explicitly contemplates the application of expedited removal proceedings to all noncitizens except those who can demonstrate continuous presence in the United States for the two years prior to their inadmissibility determination. *See id.*

Nor has this authorization gathered dust in the United States Code. As early as 2002, the Attorney General directed expedited removal of certain noncitizens who had entered the country and resided here for up to two years. *See* Notice Designating Aliens Subject to Expedited Removal Under Section 235(b)(1)(A)(iii) of the Immigration and Nationality Act, 67 Fed. Reg. 68,924 (Nov. 13, 2002) (authorizing the application of expedited removal to individuals who arrive by sea and cannot demonstrate continuous presence in the United States for two years); *see also* Designating Aliens For Expedited Removal, 69 Fed. Reg. 48,877 (Aug. 11, 2004) (authorizing the application of expedited removal to inadmissible individuals apprehended within 100 miles of the border within 14 days of entry). Moreover, from the summer of 2019 to March 2022, the government applied expedited removal to individuals *found anywhere in the United States* who could not demonstrate they had been in the country for two years. *See* Designating Aliens for Expedited Removal, 84 Fed. Reg. 35,409 (July 23, 2019); Rescission of the Notice of July 23, 2019, Designating Aliens for Expedited Removal, 87 Fed. Reg. 16,022 (Mar. 21, 2022). Thus, for more than two decades, many individuals who have been present in the United States for up to two years have been subject to expedited removal.

2. The great majority of those individuals indisputably possess full due process rights under the federal Constitution. *Department of Homeland Security v. Thuraissigiam* reaffirmed that "aliens who have established connections in this country have due process rights in deportation proceedings." 140 S. Ct. 1959, 1963–64 (2020); *see also Hernandez v. Sessions*, 872 F.3d 976, 983–84, 990 (9th Cir. 2017) (holding that noncitizen who resided in Los Angeles for years without having been lawfully admitted or

paroled was entitled to due process rights beyond what was required by statute). In *Yamataya v. Fisher*, the Supreme Court recognized the unqualified due process rights of a noncitizen apprehended by immigration authorities *four days* after coming to the country. 189 U.S. 86, 87, 100–01 (1903).

Although the majority opinion never addresses the application of expedited removal to noncitizens who are not arriving, its interpretation of 8 U.S.C. § 1252 deprives *everyone* in expedited removal proceedings of judicial review of colorable constitutional claims, raising grave constitutional difficulties. *See Webster v. Doe*, 486 U.S. 592, 603 (1988). This head-in-the-sand approach to constitutional avoidance cannot be reconciled with *Clark v. Martinez*, 543 U.S. 371, 380–81 (2005). *Clark* held that the clear statement rule of constitutional avoidance derived from *Webster*, 486 U.S. at 603, and similar cases, *see Mendoza-Linares*, 51 F.4th at 1169–70 (Graber, J., dissenting) (collecting cases), requires courts to consider the "necessary consequences" of its statutory interpretation for noncitizens affected by the statute but not presently before the court. *Id.* at 380.

Because the panel majority did not follow this precept, as matters now stand this Court, when the issue arises—as it inevitably will—will be constrained to declare the judicial review provisions (as interpreted by the panel majority) unconstitutional as applied to noncitizens who have not just arrived. The option of construing the statute to avoid that result—as the constitutional avoidance doctrine requires and as Judge Graber's dissent demonstrates is quite feasible—will have gone by the wayside. The meaning of a statute's generally applicable language cannot vary depending on which people covered by it are affected. "To give [a statute's] words a different meaning for each category [of

alien] would be to invent a statute rather than interpret one." *Clark*, 543 U.S. at 722–23.

For this pivotal reason, as well as all those surveyed in the panel dissent, I respectfully disagree with this Court's refusal to reconsider the panel opinion en banc.